IN RE GUARDIANSHIP OF REYNOLDS.

(No. 4947—Decided December 3, 1956.)

*Mr. Robert B. Dixon,* for appellant Irving H. Reynolds.
*Mr. John M. Curphy,* for appellee guardian.

FESS, J. This is an appeal on questions of law from a judgment of the Probate Court overruling an application of Irving H. Reynolds, a nonresident ward, for an order terminating a resident guardianship.

On June 21, 1954, an application for appointment of a

guardian was filed by Lawrence G. Reynolds, father of the ward. On July 2, 1954, without notice to the ward, the application was heard and, upon the giving of a bond in the sum of $20,400, letters of guardianship of the estate were issued to Lawrence G. Reynolds.

On April 11, 1956, an application was filed by Irving H. Reynolds reciting that on July 2, 1954, Lawrence G. Reynolds was appointed as guardian of his Ohio estate on the ground that he was confined to a state institution, but that he has not been so confined since November of 1955, and that he is fully capable of taking care of himself and his property. He further moved for the discharge of said guardian on the ground that the appointment was void *ab initio* for the reason that at the time prior to the appointment he, the ward, was not served with notice as provided in subdivision (B) (1) of Section 2111. 04, Revised Code.

Determination of the question depends upon whether the provisions of Section 2111.04, Revised Code, require notice to be given a nonresident incompetent and, if so, whether the giving of such notice is a jurisdictional requirement. The pertinent provisions of Section 2111.04, Revised Code, are as follows:

"No guardian of the person, the estate, or both shall be appointed until at least three days after the Probate Court has caused written notice, setting forth the time and place of the hearing, to be served upon the following persons:
" * * *

"(B) In the appointment of the guardian of an incompetent, habitual drunkard, idiot, imbecile, lunatic, or confined person notice shall be served:

"(1) Upon the person for whom such appointment is sought by personal service;

"(2) Upon the next of kin of such person for whom appointment is sought known to reside in the county in which application is made;

"Such notice shall be served by delivering a copy to each person named therein, by leaving such copy at his usual place of residence, or by sending such copy by registered mail to his last known address, except that when required by this section,

personal service of such notice shall be made on the person for whom such appointment is sought. Such notice may be waived in writing by all competent persons except the person for whom such appointment is sought.[1]

Section 2111.01, Revised Code, provides in part:

"(A) 'Guardian,' other than a guardian under Sections 5905.01 to 5905.19, inclusive, of the Revised Code, means any person, association, or corporation appointed by the Probate Court to have the care and management of the person, the estate, or both of a minor, incompetent, habitual drunkard, idiot, imbecile, or lunatic, or of the estate of a confined person.

"* * *

"(C) 'Resident guardian' means a guardian appointed by a Probate Court to have the care and management of property in Ohio belonging to a nonresident ward."

The provisions of Sections 2111.37 to 2111.40, Revised Code, originated in the Act of March 19, 1849 (47 Ohio Laws, 31), providing for the appointment by the Common Pleas Court, whenever considered necessary, of trustees for nonresident minors, and other incompetents. No provision was made in that act or any subsequent amendments thereto for notice to the ward. For many years, the statutes relating to lunacy proceedings provided for nonresident guardians of nonresident wards to administer the ward's property in Ohio. Cf. Act of March 9, 1838 (36 Ohio Laws, 40 *et seq.*). The act of March 30, 1875 (72 Ohio Laws, 161), provided for the appointment of trustees by the Common Pleas Court or the Probate Court, and its provisions were carried into the subchapter of the Revised Statutes under the subhead "Trustees for Nonresidents" in Sections 6320 to 6327, Revised Statutes. Apparently, in the interim, the statute had again been amended, because Section 6320, Revised Statutes, conferred the power to appoint such trustees upon the Probate Court only. It is interesting to note that no requirement of notice to a ward was made in the Revised Statutes, except in the case of the application for the appointment of a guardian for a drunkard. Section 6318, Revised Statutes.

---

[1] In the instant case, notice upon the ward's father as next of kin was waived.

Sections 6320 to 6327, Revised Statutes, became Sections 11014 to 11027, General Code, and likewise contained no requirement of notice to a nonresident ward.

Prior to the adoption of the 1932 Probate Code, former Section 10989, General Code, relating to resident idiots, imbeciles, etc., Section 10989-1, General Code, relating to confined persons, and Section 11012, General Code, relating to drunkards, contained provisions for notice of hearing on the application for appointment of a guardian. No statutory provision was made for notice of hearings for the appointment of guardians for minors. It had been held that notice was required to be given parents. *In re Guardianship of Gerbig,* 11 N. P. (N. S.), 529, 57 W. L. B., 77; *State, ex rel. Fisher,* v. *Madden,* 12 O. D. (N. P.), 83. In 1931, Section 10507-4, General Code (now Section 2111.04, Revised Code), was enacted (effective January 1, 1932) as a new section, consolidating the provisions with respect to notice in former Sections 10989, 10989-1 and 11012, General Code, and in addition requiring notice in the case of minors.[2]

No distinction was made in Section 10507-4, General Code, with respect to residents and nonresidents, but it is apparent that the General Assembly overlooked the provisions of Section 11014, General Code (because no provision for notice was made therein) and intended to incorporate in Section 10507-4, General Code, the provisions of former Section 10989, General Code, relating to notice to resident incompetents which referred to ''a person resident of the county, or having a legal settlement in any township thereof.''

Since provisions in the Probate Code for the appointment of a resident guardian for a nonresident ward originated in statutes relating exclusively to that subject, with no requirement of notice to the ward, and since the General Assembly in enacting Section 10507-4, General Code, in 1931, made no specific requirement for notice of a hearing upon the appointment of a resident guardian for a nonresident ward, there is consid-

[2] ''The provision for notice in case of minors is new, the present statutes containing no requirement of notice.'' Third and Final Report of the Special Committee on Revision of Ohio Probate Laws of the Ohio State Bar Association, p. 54.

erable basis for the contention that the General Assembly did not intend that the provisions of Section 2111.04, Revised Code, should include the requirement of notice or service upon a nonresident incompetent. It must be recognized also that it is practically impossible to have personal service upon a nonresident. Likewise, Section 2111.02, Revised Code, vests authority in the Probate Court to appoint a guardian of the person, the estate, or both, "provided the person for whom the guardian is to be appointed is a resident of the county or has a legal settlement therein." But, notwithstanding these observations, Section 2111.04, Revised Code, in unambiguous terms requires personal service on the person for whom the appointment of a guardian is sought, and there is therefore no occasion for resorting to rules of statutory construction. Such an unambiguous statute is to be applied, not interpreted. *Sears* v. *Weimer*, 143 Ohio St., 312, 55 N. E. (2d), 413. An oversight or mistake by the General Assembly may not be amended by the judiciary —that is exclusively a legislative function. It is therefore concluded that personal service is contemplated prior to hearing of an application for the appointment of a resident guardian.

We now proceed to consider whether the proceedings were void *ab initio*, or merely voidable at the election of the ward.

It has recently been held that in a proceeding for an adjudication of incompetency of a resident, compliance with the provisions of Section 2111.04, Revised Code, with respect to personal service is mandatory before the court acquires jurisdiction, and that a judgment declaring such person incompetent and the appointment of a guardian for his person and estate are void for lack of due process when such person has not been personally served with notice. *In re Koenigshoff* (1954), 99 Ohio App., 39, 119 N. E. (2d), 652. Cf. *In re Wertz*, 70 Ohio Law Abs., 408, 118 N. E. (2d), 188; *State, ex rel. Parsons*, v. *Bushong, Supt.*, 92 Ohio App., 101, 109 N. E. (2d), 692; *In re Guardianship of Irvine*, 72 Ohio App., 405, 52 N. E. (2d), 536. We concur in the conclusion reached by the Court of Appeals for Cuyahoga County in the *Koenigshoff* case.

Aside from the failure to serve him personally, appellant was given no notice of the proceedings upon the application, or an opportunity to be heard thereon. It is a well-established

principle that notice and hearing, or an opportunity to be heard, are essential elements of due process of law, and that a person deprived of his property without an opportunity to be heard, is denied due process of law. 11 Ohio Jurisprudence (2d), 66. It is held that a guardianship proceeding is one in rem, *Shroyer, Gdn.,* v. *Richmond,* 16 Ohio St., 455; *In re Clendenning,* 145 Ohio St., 82, 60 N. E. (2d), 676. It has been held also that an action strictly in rem does not require any notice other than that which an owner of property receives in contemplation of law when his property is judicially seized. *Thompson* v. *Steamboat Julius D. Morton,* 2 Ohio St., 26, 59 Am. Dec., 658; *Griffin* v. *Rowley, Recr.,* 3 Ohio App., 481; *Gross* v. *Wickfeldt,* 28 N. P. (N. S.), 333; *Chicago & Columbus Coal Co.* v. *Manley,* 21 W. L. B., 38, 10 Dec. Rep., 394; 11 Ohio Jurisprudence (2d), 71, Section 723. It is said that substituted or constructive service constitutes due process in actions in rem and quasi in rem when such service is necessary and where actual service is impracticable (11 Ohio Jurisprudence [2d], 71, Section 723), but since the question is not presented upon the record before us, we make no determination as to whether substituted or constructive service is sufficient compliance with the statute.[3]

For the reasons stated, the judgment of the Probate Court is reversed and the cause is remanded with instructions to grant the motion to terminate the guardianship and for further proceedings according to law.

*Judgment reversed.*

CONN and DEEDS, JJ., concur.

---

[3]See *In re Ryan* (1943), 40 N. Y. Supp. (2d), 592.

At the time *Shroyer* v. *Richmond, supra,* was decided, no notice was required by statute. In *Jordan, Gdn.,* v. *Dickson* (1888), 10 Dec. Rep., 332, 20 W. L. B., 360, Judge Taft expressed the opinion that, although the statute made no provision for it, notice ought to be given to the imbecile.