**IN RE GUARDIANSHIP OF COLLER.**

[Cite as *In re Guardianship of Coller* (1991), 74 Ohio App.3d 386.]

Court of Appeals of Ohio,
Wood County.

No. 90WD064.

Decided May 31, 1991.

*Francis C. Frey,* for appellant Ruth Cafarella.

*Craig F. Frederickson,* for appellee Margaret Browne.

*Thomas S. Middleton,* for *amicus curiae.*

---

*Per Curiam.*

This case comes on appeal from a judgment of the Wood County Court of Common Pleas, Probate Division, which entered a judgment removing appellant, Ruth L. Cafarella, as guardian of the person of Carol Grace Coller, an incompetent.

Appellant timely appealed that judgment. She sets forth two assignments of error for our consideration:

"I. The court abused its discretion by failing to act in the best interest of its ward.

"II. The court abused its discretion by removing one co-guardian and not the other, since the law requires that guardians must be residents of the state in which the guardianship was created."

The following facts are relevant to our disposition of this cause. On October 6, 1981, appellee, Margaret L. Browne; appellant, Ruth L. Cafarella; and Almyra M. Powell filed an application in the Wood County Probate Court for appointment as co-guardians of the person of Carol Grace Coller, an alleged incompetent, who then resided or had legal settlement in Bowling Green, Wood County, Ohio. All three proposed co-guardians are first cousins of Carol Coller. It is undisputed that on the date the application was filed Margaret Browne was a resident of Devon, Pennsylvania, Ruth Cafarella was a resident of Craryville, New York, and Almyra Powell was a resident of Morton, Illinois. On the same date the application for guardianship of the person was filed, attorney Thomas S. Middleton, a resident of Bowling Green, Wood County, Ohio, filed an application for appointment as the guardian of the estate of Carol Grace Coller. It is undisputed that the property of Carol Coller was located in Wood County, Ohio. A consent to the guardianships, signed by Coller, was also filed. The basis of the alleged incompetency was "physical disability—infirmity."

On October 19, 1981, Coller was adjudicated as an incompetent "by reason of physical disability." Browne, Cafarella and Powell were appointed co-guardians of her person and Middleton was appointed as guardian of her estate. In 1986, Powell was removed as one of the co-guardians of Coller's person.

As of 1990, Coller was residing in Elwyn Institute, a training and residential care facility for the handicapped, located in Primos, Pennsylvania. In her required annual report, filed March 22, 1990, appellant requested that an investigator be appointed to show cause why appellee should not be removed as co-guardian.

On March 23, 1990, Middleton filed an application for the appointment of an investigator. Middleton asserted that the annual report reflected a conflict between the co-guardians which could affect the best interest of the ward. An investigator was appointed and filed a report which recommended a change in the guardianship of the person of Coller.

An evidentiary hearing was held on June 1, 1990. At that hearing, it was revealed that appellant is still a resident of the state of New York and that appellee remains a resident of the state of Pennsylvania. On June 5, 1990, the trial court filed a judgment entry in which it found that "neither co-guardian is legally entitled to appointment because of not being residents of the state of Ohio." Nevertheless, the court then held that:

" * * * [T]here are now irreconcilable differences between the co-guardians of the person, Ruth Cafarella and Margaret Browne. The Court further finds that both are fully capable of performing duties as co-guardian, but finds that Margaret Browne lives just a few miles from the nursing home where the ward resides. The Court further finds that Ruth Cafarella should be removed as co-guardian of the person and that Charles Boxell, Esq. replace her as co-guardian of the person with Margaret Browne. The Court further finds that Ruth Cafarella should still, however, be permitted to be reimbursed from the guardianship estate for travel to visit the ward, Carol Coller, on the same basis as has been in the past (by way of guidance to co-guardians, henceforth only expenses which have been reimbursed in the past to visit Carol Coller should be approved, in their discretion)."

The probate court ordered appellant removed as a co-guardian and ordered that Charles Boxell, an Ohio attorney, and Browne be appointed to serve as co-guardians of the person of Coller.

As stated previously, appellant has set forth two assignments of error on appeal. First, she contends that the probate court abused its discretion by failing to determine the best interest of the ward. Second, appellant asserts that the trial court erred in not removing appellee as a co-guardian due to her status as a nonresident. Appellee lists four "assignments of error" in her brief. Two of these "assignments" address the arguments offered by appellant. Appellee's third "assignment" apparently contends that appellant lacks standing to raise the issue of appellee's status as a nonresident. These first three "assignments of error" shall be discussed as part of our consideration of

this case on the merits. Appellee's fourth "assignment of error" asserts that R.C. 2109.21(C), which requires that all guardians must be residents of Ohio, is unconstitutional. Appellee did not file a notice of cross-appeal. However, R.C. 2505.22 permits an appellee to file assignments of error in order to prevent the reversal of a judgment in his or her favor. *Parton v. Weilnau* (1959), 169 Ohio St. 145, 171, 8 O.O.2d 134, 148, 158 N.E.2d 719, 736; see, also, *Courtad v. Whirlpool Corp.* (1989), 48 Ohio App.3d 200, 204, 549 N.E.2d 566, 570. We shall, therefore, if necessary, address appellee's fourth "assignment of error."

Thomas Middleton has filed an *amicus curiae* brief in support of appellee, in which he asserts that appellant waived the right to raise the issue of nonresidency on appeal, that appellant is equitably estopped from raising nonresidency, that the court did not abuse its discretion in removing appellant as a co-guardian, and that R.C. 2111.121 is applicable to the case at bar.

 We shall consider appellant's second assignment of error first. Initially, we find that appellant is not precluded from raising the issue of the nonresidency status of appellee for the first time on appeal. Although this was not the stated basis of appellant's removal, the probate court specifically held that neither appellant nor appellee was entitled to appointment as the guardian of Coller's person. The court then removed appellant as a guardian, but, despite its own holding as to the applicable law, permitted appellee to remain as a co-guardian. Whether appellant raised this issue below or did not raise this issue below, the soundness of the trial court's judgment, as a whole, is subject to review. While a reviewing court cannot reverse a correct judgment merely because erroneous reasons were stated as the basis of that judgment, *Joyce v. General Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 174–175 this court has the authority to recognize any error prejudicial to an appellant under App.R. 12(A) and Civ.R. 61. Thus, so long as appellant had the ability to appeal her removal as a co-guardian, this court can consider the issue of nonresidency.

 Appellant is correct in asserting that only one who is prejudiced or "aggrieved" by a court's judgment has standing to bring an appeal of that judgment. *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.* (1942), 140 Ohio St. 160, 23 O.O. 369, 42 N.E.2d 758, syllabus. However, the Stark County Court of Appeals has held:

"An order of the probate court in a proceeding to remove a fiduciary is reviewable under R.C. 2101.45. A guardian has standing to bring such an appeal *where the judgment affects the ward adversely. First Natl. Bank v. Rawson* (1936), 54 Ohio App. 285, 8 O.O. 13, 7 N.E.2d 6." (Emphasis added.)

*In re Guardianship of Escola* (1987), 41 Ohio App.3d 42, 43, 534 N.E.2d 866, 869.

Thus, in cases such as this, the effect of the judgment on the ward is the key to the issue of standing.

█ As a result of the removal of appellant as a co-guardian, the question of whether the probate court had the authority to retain appellee as a co-guardian has arisen. Indeed, as will be discussed below, the probate court's decision brings into question that court's jurisdiction over the appointment of a guardian of the person of Carol Coller. In short, Coller as a result of removal is likely to be left without the protection of a guardian of her person. Therefore, the trial court's judgment adversely affects the ward. Moreover, appellant, as a first cousin of Coller and one who has been very involved in the ward's welfare for many years, had sufficient interest in the court's judgment to raise the issue of whether the appointment of another nonresident exceeded the court's authority, thereby adversely affecting the best interest of the ward.

█ A probate court is a court of limited jurisdiction and the proceedings therein are restricted to those actions permitted by statute and by the Ohio Constitution. *Corron v. Corron* (1988), 40 Ohio St.3d 75, 77, 531 N.E.2d 708, 710. Hence, a resolution of appellant's second assignment of error requires an examination of the controlling statutory provisions during the relevant time periods.

R.C. 2101.24, as effective in 1981, provided in material part:

"Except as otherwise provided by law, the probate court has jurisdiction:

" * * *

"(D) To appoint and remove guardians and testamentary trustees, direct and control their conduct, and settle their accounts.

" * * *

"The probate court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, *unless the power is expressly otherwise limited or denied by statute.*" (Emphasis added.)

Thus, under the statute, a probate court's authority in determining matters properly before it, including guardianship matters, can be expressly limited by statute.

█ R.C. 2111.02, as effective in 1981, granted the probate court the power to appoint a guardian of the person, the estate, or both of an incompetent. The statute required that the person for whom the guardian was to be appointed be a resident of the county or have legal settlement therein and that

the alleged incompetent have assistance of counsel in the proceeding for the appointment of a guardian. In addition, a person who was alleged to be incompetent due to a physical disability had to consent to the appointment of a guardian and could, if he or she so chose, select a guardian who in the words of the statute, "shall be appointed if a suitable person." R.C. 2111.02 (as effective in 1981). Nevertheless, the probate court's choice of a guardian was (and is) limited by R.C. 2109.21. That provision, as effective in 1981, read as follows:

"A guardian shall be a resident of the county, except that the court may appoint a nonresident of the county who is a resident of the state as guardian of the person, the estate, or both, and except that a nonresident of the county or of the state may be appointed a guardian, if named in a will by a parent of a minor, as provided by section 2111.12 of the Revised Code. A guardian, other than a guardian named in a will by a parent of a minor, may be removed on proof that he is no longer a resident of the county in which he resided at the time of his appointment, and shall be removed on proof that he is no longer a resident of the state."

In this case, it is undisputed that Carol Coller was a resident of Wood County in October 1981. Both the applications for an appointment of guardians of her person and estate allege that Coller is incompetent by reason of physical disability. The probate court adjudged her to be incompetent by reason of physical disability. Coller's written consent, as then required under R.C. 2111.02, to the appointment of guardians of her person and estate was filed with the applications and is part of the record on appeal. Accordingly, the requirements of R.C. 2111.02, as it was set forth in 1981, were met. Nonetheless, in her consent, Coller selected three persons who were, by their own admission in their respective applications, nonresidents of the state of Ohio. No matter how eminently suitable any one or all three of these persons were for the appointment as guardian/co-guardians of the person of Carol Coller, the probate court's authority to appoint them as such was precluded by R.C. 2109.21. See, *e.g.*, *In re Guardianship of Lloyd* (1964), 8 Ohio App.2d 223, 224, 32 O.O.2d 128, 129, 197 N.E.2d 377, 378 (under R.C. 2109.21, the removal of a guardian who is a nonresident of the state is mandatory). When the court exceeded that authority and appointed the three as guardians, that appointment was voidable from the outset. It is unfortunate that a Wood County resident was not appointed, with Coller's consent, as a guardian of Coller's person in 1981 because the court's power to appoint Boxell in 1990 is now at issue. Once the statutory requirements are satisfied, the probate court has exclusive and continuing jurisdiction over guardianship matters. *In re Clendenning* (1945), 145 Ohio St. 82, 30 O.O. 301, 60 N.E.2d 676. However, the failure to fulfill the mandates of the pertinent statutes precludes the

court from exercising that jurisdiction. While the adjudication of incompetency and the 1981 appointment of a guardian of Coller's estate may be valid and the court had and has continuing jurisdiction over matters related to the same, the void appointment of the co-guardians of Coller's person and the probate court's disregard of the applicable statutes may have deprived the court of the authority to deal with any questions arising as to the guardianship of the Coller's person.

For example, the record of this case does not indicate whether Coller had residence or legal settlement in Wood County as of 1990. Accordingly, the probate court may have lacked the statutorily defined jurisdiction to appoint any guardian of Coller's person. R.C. 2111.02; *LeSueur v. Robinson* (1988), 53 Ohio App.3d 9, 12, 557 N.E.2d 796, 799. Furthermore, assuming jurisdiction, Coller was found to be incompetent by reason of physical disability. As of January 1, 1990, the statutes governing appointments of guardians for a person whose "incompetency" is premised upon physical disability had been amended, see R.C. 2111.02, and a new provision enacted. See R.C. 2111.021. Thus, the current statutes were not followed in the course of the proceedings below.

We further note that R.C. 2111.121 is not applicable to the instant case. That statute, which permits an individual to nominate a nonresident guardian of his person, estate or both, was not in effect until March 22, 1989. The statute contains no clearly expressed legislative intent that it is to be applied retroactively. Therefore, it cannot be applied to proceedings which occurred in 1981. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph two of the syllabus. No nomination was made in 1990. Accordingly, the trial court did err in ordering that appellee be retained as a co-guardian and may have lacked the jurisdiction to appoint Boxell as the other co-guardian. However, our inquiry is not at an end.

██ Appellee contends that R.C. 2109.21(C), as effective May 31, 1990 (formerly R.C. 2109.21), is unconstitutional in that it violates the Equal Protection Clauses of the Constitution of the United States and the Ohio Constitution. We shall consider this contention pursuant to R.C. 2505.22, which permits an appellee to present an assignment of error in order to prevent a reversal of the trial court's judgment.

The guaranty of equal protection of the law, under both the Fourteenth Amendment to the Constitution of the United States and Section 2, Article I of the Ohio Constitution, requires that no person or class of persons be denied the same protection of the law which is enjoyed by other persons or other classes in the same place and under like circumstances. *Rose v. Mayfield* (1984), 20 Ohio App.3d 300, 301, 20 OBR 392, 393, 486 N.E.2d 197, 199. If a

fundamental constitutional right is not involved, a statute will be upheld if it bears a rational relationship to a legitimate governmental purpose. *State ex rel. Brown v. Summit Cty. Bd. of Elections* (1989), 46 Ohio St.3d 166, 168, 545 N.E.2d 1256, 1258. See, also, *In re Guardianship of Bissmeyer* (1988), 49 Ohio App.3d 42, 44, 550 N.E.2d 210, 213.

Appellee does not maintain that R.C. 2109.21(C) (and its predecessor statute) affects a fundamental right of nonresidents who may be otherwise qualified to be guardians of an Ohio resident. Appellee contends that the statute does not distinguish between resident and nonresident wards by requiring that a nonresident ward have a guardian who is a resident of Ohio. Appellee's argument fails for several reasons. The statute in question affects nonresident guardians, not wards. Moreover, the statute is rationally related to a legitimate governmental purpose. That purpose is to insure the proximity of a guardian to his ward and to the probate court having jurisdiction over that ward so that the best interest of the ward can be monitored and protected. In addition, we observe that R.C. Chapter 2111 does provide for the removal of an Ohio guardian in the event that a ward moves to another state or territory and a guardian is appointed who resides therein. See R.C. 2111.41. See, also, R.C. 2111.471 (transfer when ward removes to another county). Thus, R.C. 2109.21(C) was not enacted to penalize otherwise suitable applicants for a guardianship. Rather, it was enacted for the benefit of the ward and the court, which is, in reality, the actual guardian of that ward. See *Clendenning, supra*, 145 Ohio St. at 92–93, 30 O.O. at 305–306, 60 N.E.2d at 681. The statutory scheme recognizes this purpose by permitting the transfer of the guardianship when the ward is removed from the state. Accordingly, R.C. 2109.21 does not violate equal protection.

For all of the foregoing reasons, appellant's second assignment of error is found well taken.

Appellant's first assignment of error is essentially rendered moot by our disposition of her second assignment of error. Nevertheless, we shall briefly address this error as required by App.R. 12(A). See *Criss v. Springfield Twp.* (1989), 43 Ohio St.3d 83, 538 N.E.2d 406.

In her first assignment of error, appellant asserts that the probate court abused its discretion by failing to exercise its powers in the best interest of the ward. R.C. 2111.50(C). Specifically, appellant contends that the court appointed investigator's report contains no indication that he communicated with the ward as required by R.C. 2111.041. In addition, appellant, for the first time on appeal, questions the qualifications of the court-appointed investigator.

■ R.C. 2111.041 applies to initial investigations of an *alleged* incompetent and provides safeguards for the due process rights of the alleged incompetent. It does not apply to this situation because Coller had previously been adjudged incompetent. Rather, the issue in this case was an alleged conflict of interest between co-guardians which could ultimately affect the best interest of the ward. The court-appointed investigator communicated with the parties involved in the conflict and gathered data relevant to that conflict. He determined that a conflict did exist and that it would be best if a change was made in the guardianship. That recommendation and the court's finding of a conflict could serve as a basis for removal of appellant as a guardian because of the ultimate harm which could result to the ward. Therefore, the procedures followed in the investigation were not violative of R.C. 2111.041.

■ As to the qualifications of the court-appointed investigator, appellant never objected to his appointment or made any objections to the same during the hearing on this matter. Issues neither raised nor reached by the lower court will not be passed upon by a reviewing court. *In re Dismissal of Mitchell* (1979), 60 Ohio St.2d 85, 14 O.O.3d 307, 397 N.E.2d 764. Therefore, appellee waived the right to raise any purported lack of qualification on appeal. Accordingly, appellant's first assignment of error is found not well taken.

The judgment of the Wood County Court of Common Pleas, Probate Division, is affirmed, in part, and reversed, in part. On the basis of appellant's second assignment of error, the judgment of the Wood County Court of Common Pleas is ordered vacated. This cause is remanded to that court for determination of jurisdiction and, if so found, the appointment, under the controlling statutes, of a guardian of the person of Carol Grace Coller. Otherwise, upon a finding of no jurisdiction, the court should transfer this cause pursuant to the applicable statute. Costs of this appeal to be assessed equally between the parties.

*Judgment accordingly.*

HANDWORK, P.J., ABOOD and MELVIN L. RESNICK, JJ., concur.